859 N.E.2d 1215 (2006)
In the Matter of the ADOPTION OF T.W., Minor Child, and D.W., Minor Child
Matthew White, Appellant,
v.
Gary Silbernagel and Rachel Silbernagel, Appellees.
No. 55A05-0601-CV-48.
Court of Appeals of Indiana.
November 15, 2006.
Publication Ordered January 8, 2007.
Robert E. Shive, Keith E. Gifford, Bator Redman Bruner Shive & Ludwig, Indianapolis, Attorney for Appellant.
*1216 Michael G. Ruppert, Ruppert & Schaefer, P.C., Indianapolis, Attorney for Appellees.

OPINION
BAILEY, Judge.

Case Summary
Appellant Matthew White ("White") appeals an order of the Morgan County Circuit Court granting the adoption of White's children T.W. and D.W. ("the Children") by their great-uncle and great-aunt, Appellees Gary and Rachel Silbernagel ("the Silbernagels"). We affirm.

Issue
White presents two issues for review, which we consolidate and restate as one: whether the trial court erroneously concluded that White's consent to the adoptions was not required, pursuant to Indiana Code Section 31-19-9-8, subsections (a)(2)(A) and (a)(11).

Facts and Procedural History
White and Beth Ann Scott ("Scott")[1] are the biological parents of D.W., born November 24, 1997, and T.W., born June 24, 2000. The parents were both users and sellers of methamphetamine. They lived together with the Children for several years, but moved frequently. They typically resided with White's grandmother, with other relatives, or in hotels. During 2002, Scott ceased living with White and the Children, and moved in with Johnny Fancher ("Fancher"). Scott and Fancher supported themselves by dealing methamphetamine.
On October 2, 2002, White was facing a charge of battery causing serious bodily injury, and decided to turn himself into authorities. He was unable to locate Scott to take care of the Children, but made arrangements with Gary Silbernagel ("Gary"), who is Scott's uncle, to take the Children into his home temporarily. The Children had emotional outbursts and exhibited sexualized behaviors to such an extent that the Silbernagels decided to seek psychological counseling for the Children. On October 25, 2002, the Silbernagels were granted the temporary guardianship of the Children.
White was incarcerated from October 2002 until November 23, 2002. After his release, he contacted Gary and asked to see the Children. Gary informed White that D.W. made allegations to her therapist that she had been sexually abused. Gary denied White's request for visitation, pending the conclusion of the investigation that commenced after the therapist reported the allegation.[2]
On April 10, 2003, White was arrested on drug dealing and possession charges filed as a result of controlled buys conducted by Indiana State Police on several dates in July of 2002. On May 5, 2003, White was brought to trial on the battery charge, and convicted of criminal recklessness as a lesser-included offense. He was sentenced to one and one-half years, with all but 100 days suspended. On July 21, 2003, White *1217 pleaded guilty to dealing in methamphetamine, as a Class B felony. He was sentenced to twenty years imprisonment, with ten years to be executed, and seven years to be served on probation.
On August 29, 2003, the trial court conducted a hearing to address the Silbernagels' petition for the permanent guardianship of the Children. Scott did not appear at the hearing. White appeared, and requested that he be permitted visitation with the Children at his place of incarceration. The trial court refused to order the visitation and granted the Silbernagels' petition for guardianship. White did not thereafter communicate with the Children.
On August 16, 2004, the Silbernagels petitioned to adopt the Children. The trial court conducted hearings on August 17, 2005, October 12, 2005, and November 2, 2005. On December 29, 2005, the trial court granted the Silbernagels' petition for adoption. White now appeals.

Discussion and Decision

Standard of Review
White is appealing from a decision in which the trial court entered special findings of fact and conclusions pursuant to Indiana Trial Rule 52(A). Thus, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. Barger v. Pate, 831 N.E.2d 758, 762 (Ind.Ct.App. 2005). We will not set aside the findings or the judgment unless they are clearly erroneous. Id. The trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them. Id. A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. Id.
Indiana Code Section 31-19-11-1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given."
According to Ind.Code Section 31-19-9-8(a):
Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
* * * * * *
(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
(A) fails without justifiable cause to communicate significantly with the child when able to do so; or
(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
* * * * * *
(11) A parent if:
(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.
Accordingly, the Silbernagels were required to prove by clear and convincing evidence that White's consent was not required. See In re Adoption of M.A.S., 815 N.E.2d 216, 219 (Ind.Ct.App.2004). The trial court concluded that the necessity of *1218 obtaining White's consent to the adoptions was obviated on alternative grounds: his failure to communicate significantly and his parental unfitness. The provisions of Indiana Code Section 31-19-9-8 are disjunctive; as such, either provides independent grounds for dispensing with parental consent.
White first challenges the trial court's determination that his consent to the adoptions of the Children was not required due to his failure to communicate significantly with them. The trial court denied White in-jail visitation with the Children, but did not deny written or telephonic communication. White concedes that he did not attempt to personally communicate with the Children after 2002, but asserts that, had he tried to do so, the Silbernagels would have thwarted his efforts. He contends that this constitutes justifiable cause excusing his failure to communicate with the Children.
Efforts of a custodian to hamper or thwart communication between parent and child are relevant in determining the ability to communicate. Lewis v. Roberts, 495 N.E.2d 810, 812-13 (Ind.Ct.App.1986). Here, however, the record does not demonstrate that White actually tried to write to the Children or telephone them. Indeed, Gary offered to fund White's commissary account for the purchase of stamps and stationary, but the offer was not accepted. White's argument that his overtures "would have" been impeded is speculative. The trial court did not clearly err by concluding that White failed, without justifiable cause, to communicate significantly with the Children.
White next argues that the evidence did not establish his unfitness as a parent such that the Children's best interests would be served by dispensing with his consent. He contends that the trial court focused not upon his present fitness, but erroneously relied upon "his previous convictions and past drug use." Appellant's Br. at 9. White does not claim that he is presently able to care for the Children, but suggests that the Silbernagels retain custody until he enjoys "additional time to be in a better financial situation to care for his children." Appellant's Br. at 10.
The evidence most favorable to the trial court's judgment reveals that White has been unable to care for the Children largely because of his drug use and criminal convictions. He received sentences totaling twenty-one and one-half years, having been convicted of criminal recklessness and dealing methamphetamine. At the time of the adoption hearing, White was on house arrest. He testified that, for seven future years, he could leave his home to go to work, or as granted permission by his probation officer.
White did not provide financial support for the Children during their guardianship. Historically, he used his income from employment to purchase methamphetamine. After his last release from incarceration, White is apparently methamphetamine-free, as reflected by mandatory drug screening. However, he is required to pay probationary fees in addition to ordinary living expenses and conceded during his testimony that he could barely take care of himself financially. He opined that a parent's drug use did not harm one's children "as long as you don't have it in the same location with your children." (Tr. 314.)
Moreover, there is ample evidence that the Silbernagels have consistently provided *1219 for the Children's needs, and that the Children have thrived in their care. As such, there is clear and convincing evidence to support the trial court's determination of White's parental unfitness, and that dispensing with his consent to the adoptions would serve the Children's best interests.

Conclusion
The Silbernagels presented clear and convincing evidence to obviate the necessity of White's consent to the adoptions of the Children. The trial court's judgment is not clearly erroneous.
Affirmed.
RILEY, J., and MAY, J., concur.

ORDER
On November 15, 2006, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellees, by counsel, have filed a Verified Motion to Publish Decision. Because this Court's opinion in this case meets the criteria as set out in Appellate Rule 65(B), the Appellees request that this court publish the opinion.
Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:
1. The Appellees' Verified Motion to Publish Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on November 15, 2006, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.
All Panel Judges Concur.
NOTES
[1] Scott is not an active party to this appeal.
[2] D.W.'s physical examination at Riley Children's Hospital did not reveal physical trauma to her sex organs, and the allegation of sexual abuse was classified as unsubstantiated.