## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 17 2015, 8:29 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Matthew C. Maples | Christine Riesner Bond |
| Hocker & Associates, LLC | McNeely Stephenson |
| Indianapolis, Indiana | Shelbyville, Indiana |

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Adoption of C.F., | November 17, 2015 |
| | Court of Appeals Case No. 49A04-1505-AD-408 |
| J.F., | |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Evan D. Goodman, Judge |
| A.R., | Trial Court Cause No. 49D08-1405-AD-15328 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

J.F. ("Father") appeals the trial court's order granting A.R.'s petition to adopt Father's minor child C.F. ("Child"). Father raises two dispositive issues for our review:

> 1. Whether the trial court erred when it concluded that Father knowingly had failed to provide for the care and support of Child as required by judicial decree for a period of at least one year when he was able to do so.
>
> 2. Whether the trial court erred when it concluded that the adoption is in Child's best interests.

We affirm.

# Facts and Procedural History

Father and L.R. ("Mother") were married, and Child was born in January 2011. When Father and Mother divorced on January 22, 2013, the trial court gave Mother custody of Child and ordered Father to pay child support of $250 per week. Father was employed and earning approximately $40,000 per year at that time. In early 2013, Father quit that job without first having secured other employment. Thereafter, Father worked intermittently in sales positions and delivering pizzas. The trial court explained the remaining facts and procedural history as follows:

> 7. [Sometime in 2013,] Father was arrested and convicted of an OWI. He was incarcerated from January 2014 through early April 2014 due to that conviction.

8. Even after his incarceration, [Father] admitted to continuing to drink alcoholic beverages. He is not currently attending AA meetings. He is not currently attending any other counseling for substance abuse.

* * *

12. [Father] is currently dependent on his current significant other for housing as well as all living expenses. She has also paid for them to go on various vacations throughout 2013 and 2014, some of which occurred during the traditional work week.

13. [Father] did not pay Mother any child support throughout 2013. [Father] did not provide any other support to Mother during 2013 or 2014 before the filing of the Petition for Adoption, in any form of clothes, toys, diapers, Christmas presents, birthday gifts, or gift cards.

14. Mother testified that when she asked [Father] for information about his employer, he refused and stated he did not want her to garnish his wages for child support.

15. During 2013, [Father] had parenting time provision [sic] pursuant to the divorce decree that was unsupervised, yet failed to exercise it.

16. While he was incarcerated, [Father] sent three letters to the minor child, one (1) of which was received by Mother and read to the minor child due to the child's young age.

17. In April of 2014, [Father] contacted Mother to see the minor child a couple of weeks after he was released from jail. [Father] requested to see the child that day. Since it was a weekday, Mother told him he could not see him that day. During that same conversation, Mother also informed [Father] of her new husband's intent to adopt the minor child and requested his consent.

18. [Father] then retained counsel and filed several motions regarding parenting time and child support in Marion County Superior Court Number 5. Mother filed a motion request[ing] those matters be stayed due to the pending adoption proceedings. Said motion was denied.

19. Mother and [Father] then agreed, through the Court-ordered Access Program, for [Father] to have supervised visits every other weekend one hour on Saturday and one hour on Sunday. Prior to each visitation weekend, [Father] was to submit to drug and alcohol testing.

20. Out of the 24 possible visits [Father] could have exercised in 2014 prior to the hearing on this adoption, [Father] only exercised 7. Each visit coincided in time with when a hearing was scheduled in either the Marion County Probate Court or Marion County Superior Court Number 5.

21. Mother testified that [A.R.] is the only father known to the minor child, and that [sic] the minor child does not remember [Father] due to his young age at the time of the dissolution.

22. [Father] paid a total of $160.00 to Mother in child support payments in 2014, all of which occurred after the petition for adoption was filed in this court. As of the date of the adoption hearing, [Father] had a child support arrearage of $18,600.00.

23. In May of 2014, [Father] withdrew $6,000 from his 401(k) account from a prior employer. None of that money was given to Mother in [the] form of child support.

24. The petition for adoption was filed on May 7, 2014[,] by [A.R.] [A.R.] and Mother were married on February 14, 2014[,] and have resided together with the minor child since January 31, 2013.

25. [A.R.] and the minor child have a close relationship. Every morning when the child wakes up, [A.R.] and child make breakfast together. He helps the child get ready for daycare and oftentimes takes and picks up the child from daycare. He helps the child practice soccer. He attends all of the child's doctors' appointments. He discusses the child's development and status with his teachers. [A.R.]'s family is actively involved in the child's life.

26. Mother has consented to this adoption, and said consent is properly filed with the Court.

Appellee's App. at 7-8.[1] After A.R. filed his adoption petition, Father filed a motion contesting the adoption. Following a final hearing on the adoption petition on December 23, 2014, the trial court granted A.R.'s adoption petition. In its order, the trial court concluded in relevant part as follows:

*Consent of the Natural Father*

32. Indiana Code [Section] 31-19-9-8(a)(2) is the controlling statute in this case as to whether [Father's] consent is required for [the] petition to adopt the minor child.

33. I.C. [§] 31-19-9-8(a)(2) states:

(a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

* * *

---

[1] Appellant's appendix is not paginated.

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

34. The provisions of Indiana Code [Section] 31-19-9-8 are written in [the] disjunctive providing independent grounds for dispensing with parental consent. *In re the Adoption of M.L.*, 973 N.E.2d 1216 (Ind. Ct. App. 2012).

35. In this case, there is sufficient evidence to determine that [Father's] consent is not required by applying either subsection (2)(A) or subsection (2)(B).

*Communication*

36. With regard to subsection (A) *supra*, the evidence presented is sufficient to conclude that [Father] failed to have significant contact with the minor child for one (1) year prior to the petition for adoption being filed.

37. [Father] lived in the greater Indianapolis area from the date of the divorce decree, January 22, 2013, until the filing of the petition for adoption in May of 2014.

38. During that seventeen (17)[-]month time period, [Father] only saw the minor child five (5) times, all of which occurred during the first couple of months in 2013. The evidence presented was that all of those visits were prompted by Mother,

at which time she coordinated the visits and provided [Father] with all the supplies he would need to see his child, including a pack and play, membership to the Children's Museum, diapers, and even food. Once Mother ceased facilitating the visits, the visits stopped.

39. The last time [Father] saw the minor child prior to the petition for adoption being filed was in April of 2013. He visited Mother's home for one (1) hour. During that time period, Mother discovered Father smelled of alcohol. He spilled a glass of water.

40. During the remainder of 2013, [Father] did not see his minor child despite the fact that he lived in central Indiana and had the ability to do so. During that time period, he had an unsupervised parenting time schedule through the divorce, yet failed to exercise any parenting time.

41. From January 2014 through the beginning of April of 2014, [Father] was incarcerated after being convicted of an OWI. [Father's] argument that he was unable to see his child due to his incarceration, and therefore this time period should not be considered, is unfounded. [Father's] incarceration was a result of his own actions, and therefore any lack of communication during that time should be considered for purposes of determining consent under the statute. *In re the Adoption of M.S.*, 10 N.E.3d 1272 (Ind. Ct. App. 2014).

42. After the petition for adoption was filed, [Father], through counsel, filed several motions in the divorce court resulting in him participating in supervised parenting time during the pendency of this adoption action. Any actions made after the filing of a petition for adoption are irrelevant to a determination of whether the parent failed to significantly communicate with the child for any one-year period. *In re the Adoption of S.W.*, 979 N.E.2d 633 (Ind. Ct. App. 2012).

43. The purpose of the statute is to promote and maintain communication between the non-custodial parent and the child. It is not a means for a parent to maintain just enough contact to thwart a potential adoption. *In re the Adoption of S.W.*, 979 N.E.2d 633 (Ind. Ct. App. 2012). In order for consent to not be required, petitioner does not have to prove that no communication occurred, just that no significant communication occurred. *In re the Adoption of S.W.*, 979 N.E.2d 633 (Ind. Ct. App. 2012).

44. The evidence in this case is sufficient to conclude that [Father] failed to have significant contact with the minor child for a one[-]year period of time so that his consent is not required for this adoption.

*Support*

45. [Father's] consent can also be dispensed [with] in accordance with section (2)(B) of the statute.

46. The evidence presented showed that at the time of the parties' divorce, [Father] was making $40,000 per year. The divorce decree ordered [Father] to pay $250 per week in child support.

4[7]. [Father] did not pay any child support during the calendar year 2013. He testified that he had several jobs that he voluntarily quit without having a new job secured. Mother testified that when she asked for the information regarding one of his employers, he refused to give it to her because she might try to garnish his wages for child support.

48. From January 2014 through the beginning of April of 2014, [Father] was incarcerated after being convicted of an OWI. [Father]'s argument that he was unable to pay child support due to his incarceration, and therefore this time period should not be considered, is unfounded. [Father]'s incarceration was a result of

his own actions, and therefore any lack of payment of support during that time should be considered for purposes of determining consent under the statute. *In re Adoption of T.L.*, 4 N.E.3d 658 (Ind. 2014).

49. He has paid Mother a total of $160.00 from January 2013 until the date of the hearing on December 23, 2014, all of which was paid after the filing of the petition for adoption. He has not provided any other support to the minor child during that time in the form of clothes, toys, gift cards, or Christmas presents. [Father]'s child support arrearage as of the date of the hearing was $18,600.00.

50. In May of 2014, he withdrew $6,000.00 from his 401(k) from his previous employment. None of that money was given to Mother in the form of child support.

51. [Father] has been living with his girlfriend since August of 2013. She has paid for them to go on various vacations throughout 2013 and 2014, some of which occurred during the traditional work week.

52. This constitutes sufficient evidence that [Father] had the ability to obtain employment and pay child support, but voluntarily failed to do so. *See In re the Adoption of J.L.J.*, 4 N.E.3d 1189 (Ind. Ct. App. 2014).

53. The monies paid by [Father] since the filing of the petition for adoption amount to "token payments." The Indiana Court of Appeals has held that to allow token payments to thwart the ability of a willing parent to adopt "would permit an unworthy parent, in complete disregard of his obligation to his child, to prevent an adoption which might be in the best interest of the child . . . such strict construction would lead to absurd consequences and make the statute meaningless and ineffective.["] *In re the Adoption of M.S.*, 10 N.E.3d 1272 (Ind. Ct. App. 2014).

*Best Interest of the Child*

54. There is sufficient evidence to support a finding that the granting of this adoption is in the best interest of the minor child.

55. [A.R.] has met the statutory requirements necessary for the granting of this adoption.

56. [A.R.] has been the only father the minor child has known for the past two (2) years. [A.R.] and the minor child have an established bond, and [A.R.] is greatly involved in the child's day-to-day activities including soccer, school, cooking, and shopping. [A.R.] has financially supported the child and provided health insurance for the child for that period of time as well.

57. [A.R.]'s family is equally bonded to the minor child acting as grandparents and aunts and uncles.

58. [Father] and Mother were divorced when the child was just 1 1/2 years old. Since the filing of the petition for adoption, [Father] has seen the minor child for a total of 7 hours. The minor child does not know [Father], and there is no established bond between [Father] and the minor child.

59. [Father] has not established that he has the ability to provide a suitable environment for the child. He was incarcerated for a felony OWI, which was later reduced to a misdemeanor. Despite that, he continues to drink alcoholic beverages and is not attending AA or any other substance abuse counseling.

60. [Father] is not currently employed and has been employed sporadically since the dissolution due to his voluntarily leaving positions without new positions becoming available.

61. [Father] is currently dependent on his current significant other.

62. Despite agreeing to supervised visitation, [Father] has failed to attend the majority of the possible visits during the pendency of this adoption action.

63. [Father] made no effort to communicate with the child or financially support the child until after he learned of petitioner's intention to file this step-parent adoption action. It has now been a total of two (2) years of insignificant contact.

Appellee's App. at 9-13. Thus, the trial court concluded that Father had not "seen, supported or communicated with [Child] for over a one (1)[-] year period" and Father's consent was not required under either prong of Indiana Code Section 31-19-9-8(a)(2). *Id.* at 13. The trial court also concluded that adoption was in Child's best interests, and the court granted A.R.'s adoption petition. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

"When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Rust v. Lawson*, 714 N.E.2d 769, 771 (Ind. Ct. App. 1999). We presume the trial court's decision is correct, and we consider the evidence in the light most favorable to the decision. *Id.* at 771-72.

When, as in this case, the trial court has made findings of fact and conclusions of law, we apply a two-tiered standard of review:

"we must first determine whether the evidence supports the findings and second, whether the findings support the judgment." [*White v. Silbernagel (]In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 52(A) (providing that where the trial court has made findings of fact and conclusions of law, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." [*In re* ]*T.W.*, 859 N.E.2d at 1217.

*In re T.L.*, 4 N.E.3d at 662.

### Issue One:  Care and Support of Child

[4]     Father first contends that the trial court erred when it found that he had failed to provide for the care and support of Child for one year when able to do so. Indiana Code Section 31-19-9-8(a)(2) provides that consent to adoption is not required from a parent of a child in the custody of another person if for a period of at least one year the parent:

> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

The burden to prove these statutory criteria by clear and convincing evidence rests squarely upon the petitioner seeking to adopt. *Id.*

Here, the trial court found that Father's consent was not required under either Indiana Code Section 31-19-9-8(a)(2)(A) or -8(a)(2)(B). Because the statute is written in the disjunctive, however, we need only address Father's contention that the trial court erred when it found that he had knowingly failed to provide for the care and support of Child when able to do so as required by the dissolution decree.

The time period relevant to a determination under Indiana Code Section 31-19-9-8(a)(2)(B) is not limited to either the year preceding the hearing or the year preceding the petition for adoption but, rather, is any year in which the parent had an obligation and the ability to provide support, but failed to do so. *R.S.P. v. S.S. (In re Adoption of J.T.A.)*, 988 N.E.2d 1250, 1255 (Ind. Ct. App. 2013), *trans. denied*. Further, in *In re M.S.*, 10 N.E.3d at 1280, we observed as follows:

> "A petitioner for adoption must show that the non-custodial parent had the ability to make the payments which he failed to make. This ability cannot be adequately shown by proof of income standing alone. To determine that ability, it is necessary to consider the totality of the circumstances. In addition to income, it is necessary to consider whether that income is steady or sporadic and what the non-custodial parent's necessary and reasonable expenses were during the period in question."

(Quoting *Bruick v. Augustyniak (In re Adoption of Augustyniak)*, 508 N.E.2d 1307, 1308 (Ind. Ct. App. 1987), *trans. denied*).

Father's child support obligation began on January 22, 2013, the date of the dissolution decree. Father does not challenge the trial court's finding that he

"did not pay any child support during the calendar year 2013." Appellee's App. at 11. And Father concedes that he did not pay any child support in 2014 until April 30. Thus, Father did not pay child support for more than one year beginning January 22, 2013. But Father maintains that, after the divorce, he "fell on hard times financially" because he was unable "to find stable employment" and was incarcerated for approximately three months in early 2014. Appellant's Br. at 8. Father asserts that he was not able to pay child support during that time and the trial court erred when it found that he knowingly failed to support Child.[2]

[8] Father's contention amounts to a request that we reweigh the evidence, which we will not do. Father does not contest the trial court's findings that he: has had periods of unemployment solely because he voluntarily quit several jobs without first securing other employment; moved in with his girlfriend in August 2013 and is dependent on her for housing and living expenses; and withdrew $6,000 from a 401(k) account in May 2014, but used none of that money for child support. Father has not demonstrated that he was involuntarily unemployed at any time from January 22, 2013, until his incarceration in January 2014. And given that he withdrew $6,000 from his 401(k) account in May 2014, Father has not demonstrated that he could not have paid child support during periods of unemployment or during his incarceration. *See, e.g.,*

---

[2] We note that Father does not direct us to anything in the record showing that he moved the dissolution court to modify his child support obligation at any time.

*In re T.L.*, 4 N.E.3d at 663 (adopting the "non-imputation" approach to determine the child support obligation of incarcerated parents which requires that child support orders reflect the "real financial capacity of a jailed parent."). The trial court did not err when it concluded that Father knowingly failed to pay child support for one year and that Father's consent to the adoption was unnecessary.

### Issue Two: Best Interests of Child

[9] Father next contends that the trial court erred when it concluded that adoption is in Child's best interests. The primary concern in every adoption proceeding is the best interests of the child. *In re M.S.*, 10 N.E.3d at 1281. Even if, as here, a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *N.R. v. K.G. (In re Adoption of O.R.)*, 16 N.E.3d 965, 974 (Ind. 2014).

> The adoption statute does not provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding, but we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. *See In re* [*M.L.*], 973 N.E.2d [at] 1224 . . . (holding that the adoption statutes and the termination statutes provide similar balances between parental rights and the best interests of the children; also holding that termination cases provide "useful guidance as to what makes a parent 'unfit'"). In termination cases, we have held that the trial court is required to look to the totality of the evidence to determine the best interests of a child. *In re I.A.*, 903 N.E.2d 146, 155 (Ind. Ct. App. 2009). Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child, *In re J.C.*, 994 N.E.2d 278, 290

(Ind. Ct. App. 2013); the recommendations of the child's case worker or guardian ad litem; and the child's need for permanence and stability, *see A.J. v. Marion Cnty. Office of Family and Children*, 881 N.E.2d 706, 718 (Ind. Ct. App. 2008).

*In re M.S.*, 10 N.E.3d at 1281-82.

[10] Again, in concluding that adoption is in Child's best interests, the trial court concluded as follows:

> 56. [A.R.] has been the only father the minor child has known for the past two (2) years. [A.R.] and the minor child have an established bond, and Petitioner is greatly involved in the child's day-to-day activities including soccer, school, cooking, and shopping. Petitioner has financially supported the child and provided health insurance for the child for that period of time as well.
>
> 57. Petitioner's family is equally bonded to the minor child acting as grandparents and aunts and uncles.
>
> 58. [Father] and Mother were divorced when the child was just 1 1/2 years old. Since the filing of the petition for adoption, [Father] has seen the minor child for a total of 7 hours. The minor child does not know [Father], and there is no established bond between [Father] and the minor child.
>
> 59. [Father] has not established that he has the ability to provide a suitable environment for the child. He was incarcerated for a felony OWI, which was later reduced to a misdemeanor. Despite that, he continues to drink alcoholic beverages and is not attending AA or any other substance abuse counseling.

60. [Father] is not currently employed and has been employed sporadically since the dissolution due to his voluntarily leaving positions without new positions becoming available.

61. [Father] is currently dependent on his current significant other.

62. Despite agreeing to supervised visitation, [Father] has failed to attend the majority of the possible visits during the pendency of this adoption action.

63. [Father] made no effort to communicate with the child or financially support the child until after he learned of petitioner's intention to file this step-parent adoption action. It has now been a total of two (2) years of insignificant contact.

Appellee's App. at 12-13.

[11] On appeal, Father asserts that his failure to maintain consistent visitation with Child after the divorce was due to the loss of his driver's license and that he failed to pay child support because of his "financial hard times." Appellant's Br. at 9. Father points out that "he wrote his son letters" while he was incarcerated. *Id.* And Father maintains that the trial court should have given more weight to the report prepared by Michelle McGrotty, who supervised seven one-hour visitations between Father and Child from September 2014 through November 2014. In particular, Father points out that McGrotty concluded that Father "continues to nurture a bond with his child, who climbs onto his lap at the start of every visit, remaining there until it's time to play on the floor or go home." Appellant's App. at 20. But, again, Father's contentions on appeal amount to a request that we reweigh the evidence, which we will not

do. The trial court did not err when it concluded that adoption is in Child's best interests.

[12] Affirmed.

Kirsch, J., and Barnes, J., concur.