## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 05 2016, 6:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia Phillips Smith
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Michael B. Troemel
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of S.W.F., a Minor Child

S.D.F.,

*Appellant-Respondent,*

v.

M.C.T.,

*Appellee-Petitioner*

August 5, 2016

Court of Appeals Case No. 79A04-1512-AD-2116

Appeal from the Tippecanoe Circuit Court

The Honorable Thomas H. Busch, Judge

Trial Court Cause No. 79C01-1504-AD-16

**Bailey, Judge.**

## Case Summary

[1] S.W.F. ("Birth Father") and C.T. ("Mother") were parents to S.W.F. ("Child"). In 2015, M.C.T. ("Adoptive Father"), by then married to Mother

and thus Child's stepfather, filed a petition to adopt Child. The trial court determined that the adoption could move forward without Birth Father's consent, and granted the adoption petition. Birth Father now appeals.

We affirm.

# Issues

Birth Father raises two issues for our review, which we restate as:

    I.    Whether the trial court abused its discretion when it concluded that Birth Father's consent to the adoption was unnecessary; and

    II.    Whether the requirements of the Indian Child Welfare Act ("the Act") were not satisfied, thus requiring reversal of the adoption.

# Facts and Procedural History

Child was born in 2002 to Mother and Birth Father in Kentucky. Mother eventually moved to Benton County, Indiana, and at some point Birth Father also moved to Indiana. Both Birth Father and Mother suffer from physical and mental disabilities that limit their respective incomes.

A paternity case was opened concerning Child in the Benton Circuit Court, and Birth Father was ordered to pay child support. On May 17, 2007, upon Birth Father's request (apparently proceeding *pro se*), the Benton Circuit Court issued an agreed order terminating Birth Father's child support obligation. From that

point forward, Birth Father was under no further court-ordered obligation to pay child support and made no voluntary contributions toward Child's well-being.

[6] In 2009, Mother moved to Lafayette and resided with Adoptive Father. Mother did not filed a notice of intent to move at this or any other time.[1] Birth Father also did not file such notices when he relocated to a home in Lafayette in the same year.

[7] At some point, Birth Father and Adoptive Father attempted to settle on a parenting time schedule for Birth Father and Child. There was considerable hostility, and as a result no schedule was arrived at. Birth Father continued to contact Mother, in particular, by telephone, often warning her that he would hire an attorney and attempt to take Child back to Kentucky. Sometimes Birth Father would use profanity toward Mother. To stop Birth Father's phone calls, which Mother found harassing, Mother and Adoptive Father in 2011 changed their home telephone number.

[8] Birth Father had no contact with Child after 2009. Birth Father knew where Child attended school; Mother instructed the school not to permit Birth Father to contact Child. Birth Father did not make requests for grade reports or other

---

[1] Ind. Code § 37-17-2.2-1(a) requires that custodial and non-custodial parents file notice of intent to move with the clerk of the court with jurisdiction over custody or parenting time orders in a case.

information about Child's education, and during most of the period from 2009 until the filing of the adoption petition he knew where Child attended school.

[9] Birth Father also did not avail himself of the courts to attempt to enforce parenting time rights. Instead, Birth Father drove through the neighborhood where he knew Child resided with Mother and Adoptive Father. Birth Father would inquire of children who went to school with Child as to Child's whereabouts. In 2015, Father was driving in Child's neighborhood and saw Mother, thereby learning the location of Child's home.

[10] On April 6, 2015, Adoptive Father filed the petition for adoption, which alleged that Birth Father's consent to the adoption was not required because of the duration of time during which Birth Father had not communicated with Child. Two hearings were conducted on the petition. The first hearing, on July 16, 2015, centered on the question of whether Birth Father's consent was required; the trial court found on September 11, 2015 that the requirements for dispensing with consent had been met. The second hearing, on October 28, 2015, was related to whether adoption of Child by Adoptive Father was in Child's best interests. That day, the trial court concluded that adoption was in Child's best interests and that Birth Father's parental rights should be terminated. On November 5, 2015, the court entered its order of adoption.

[11] This appeal ensued.

# Discussion and Decision

# Standard of Review

[12]     The Indiana Supreme Court has recently restated the standard of review for

challenges to adoption proceedings:

> "When reviewing the trial court's ruling in an adoption
> proceeding, we will not disturb that ruling unless the evidence
> leads to but one conclusion and the trial judge reached an
> opposite conclusion." *Rust v. Lawson,* 714 N.E.2d 769, 771 (Ind.
> Ct. App. 1999). We presume the trial court's decision is correct,
> and we consider the evidence in the light most favorable to the
> decision. *Id.* at 771-72.
>
> When, as in this case, the trial court has made findings of fact
> and conclusions of law, we apply a two-tiered standard of review:
> "we must first determine whether the evidence supports the
> findings and second, whether the findings support the judgment."
> *In re Adoption of T.W.,* 859 N.E.2d 1215, 1217 (Ind. Ct. App.
> 2006); *see also* Ind. Trial Rule 52(A) (providing that where the
> trial court has made findings of fact and conclusions of law, "the
> court on appeal shall not set aside the findings or judgment
> unless clearly erroneous, and due regard shall be given to the
> opportunity of the trial court to judge the credibility of the
> witnesses."). Factual findings "are clearly erroneous if the record
> lacks any evidence or reasonable inferences to support them
> [and] ... a judgment is clearly erroneous when it is unsupported
> by the findings of fact and the conclusions relying on those
> findings." *T.W.,* 859 N.E.2d at 1217.

*In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014).

# Consent Requirement

Birth Father's first contention on appeal is that the trial court erred when it found that his consent to the adoption was not required. Subject to exceptions specified by statute, "a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent has been executed" by certain parties. I.C. § 31-19-9-1(a). Section 31-19-9-8 sets forth exceptions to the consent requirement. Here, the trial court concluded that Birth Father's consent was not required under subsection (a) of the statute:

> Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following: …
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> > (A) fails without justifiable cause to communicate significantly when able to do so as required by law or judicial decree.

The petitioner seeking to adopt the child must bear the burden of proving by clear and convincing evidence that these statutory requirements have been met. *T.L.*, 4 N.E.3d at 663.

The evidence presented to the trial court was that Birth Father had not seen or spoken with Child for six years—from 2009 to 2015. Both Birth Father and Mother had moved without notifying a court of their intent to do so, and Mother and Adoptive Father changed their home phone number—in part to

avoid harassing phone calls from Birth Father. Birth Father had demonstrated his ability to avail himself of access to the courts to obtain child support modifications, but failed to use this same access to enforce his right to parenting time with Child. Instead, Birth Father testified, because he did not know the exact address at which Child resided, he drove around the area where he knew Child lived with Mother and Adoptive Father and asked other children if they knew where Child resided. Further, during the six-year period preceding the petition for adoption, Birth Father knew where Child attended school but made no efforts to obtain contact information for Child and made no efforts to send birthday or holiday gifts to child. *See In re Adoption of Subdza*, 562 N.E.2d 745, 749 (Ind. Ct. App. 1990) (noting that in a two-year period, "the statute does not contemplate 'regular' communication. One significant communication in a year would have been sufficient.").

[15] Birth Father acknowledges that he did not communicate with Child for well in excess of the one-year period designated by the statute. However, he insists that he lacked the ability to communicate with Child because Mother changed her phone number and obtained a protective order. Yet, as the trial court observed, Birth Father failed to avail himself of the courts to circumvent this problem, but was able to do so on multiple occasions with respect to child support. And the evidence in the record is that when Birth Father did have Mother's phone number, he did not seek to talk to Child, but instead would threaten to hire a lawyer and take Child away from Mother. Moreover, to the extent Birth Father points to "testimony about calling law enforcement, obtaining a protective

order, changing addresses … informing the school to not allow contact," lacking a current phone number, and not filing change of address notices, (Appellant's Br. at 8) these amount to requests that we reweigh evidence and second-guess the trial court.

[16] In light of the foregoing, we conclude that the trial court did not clearly err when it found that Birth Father's consent to the adoption was not necessary.

# Indian Child Welfare Act

[17] We turn now to Birth Father's other issue on appeal, whether his due process rights were violated because the adoption was ordered without compliance with the Indian Child Welfare Act.

[18] During the second hearing, addressing whether adoption was in Child's best interests, Birth Father was permitted to testify concerning what he considered to be Child's best interests. Birth Father stated that he was a "full blooded" member of the Cherokee tribe, as was his father, and that Child was also eligible for tribe membership. (Amended Tr. at 99.) Birth Father further stated that he was concerned that Child would lose his "Indian [h]eritage" as a result of being adopted by Adoptive Father, because Birth Father would not have contact with Child. (Amended Tr. at 100.) While these matters were presented to the trial court during the best interests hearing, neither party notified or requested that the court notify the Cherokee tribe to permit its involvement in the case.

The Indian Child Welfare Act provides that, "[i]n any involuntary proceeding in a State court" involving an "Indian child," the party seeking foster care placement or termination of parental rights "to an Indian child shall notify the parent or Indian custodian and the Indian child's tribe … of the pending proceedings and of their right to intervention." 25 U.S.C. § 1912(a). Birth Father contends that because this did not occur, the adoption order must be vacated.

Taking as true Birth Father's testimony concerning his own tribal membership and the status of Child's claim to tribal membership, we observe that Indiana courts have previously recognized that 25 U.S.C. § 1912 operates against the broader background of the Act. *In re Adoption of T.R.M.*, 525 N.E.2d 298, 303-04 (Ind. 1988). The Act's provisions include the following statement of Congressional policy:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902. Indiana's appellate courts have interpreted the Act as "'applicable when you have Indian children being removed from their existing

Indian environment.'" *In re Adoption of D.C.*, 928 N.E.2d 602, 605 (Ind. Ct. App. 2010) (quoting *T.R.M.*, 525 N.E.2d at 303), *trans. denied*.

[21] Here, Birth Father is a Cherokee Indian and claims that Child is also entitled to such status. However, Child had not resided within an existing Indian environment for at least six years prior to the petition for adoption. That is, for the period at issue in this appeal, Child "never lived in an Indian home from which he could be removed." *Id.* at 605. The Act is thus inapplicable in the instant case and provides no basis for reversal; any error associated with failure to give notice to Birth Father's tribe is thus harmless. *See* Ind. Trial Rule 61 (providing that harmless error—error that does not affect a party's substantial rights—provides no basis for reversal of a trial court's judgment).

## Conclusion

[22] The trial court did not clearly err when it found that Birth Father's consent was not necessary for the adoption proceedings. Failure to notify Birth Father's Indian tribe of the adoption proceedings does not require vacation of the adoption decree.

[23] Affirmed.


Riley, J., concurs.
Barnes, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of
S.W.F., a Minor Child,

S.D.F.,

*Appellant-Respondent,*

v.

M.C.T.,

*Appellee-Petitioner.*

Court of Appeals Case No.
79A04-1512-AD-2116

**Barnes, Judge, concurring with separate opinion**

I concur with the majority's conclusion. I write to once again urge, as I did in *In re Adoption of D.C.*, 928 N.E.2d 602, 607-09 (Ind. Ct. App. 2010), *trans. denied*, that our supreme court examine Indiana's precedent and status in these types of cases. Indiana clings to a minority view regarding the "existing Indian family" doctrine. A clarification and/or an affirming of that position would be helpful, I believe.