## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 25 2019, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

APPELLEES PRO SE

B.K.
Br.K.
Union City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of: J.K. (Minor Child), | October 25, 2019 |
| | Court of Appeals Case No. 19A-AD-911 |
| T.L., *Appellant-Respondent,* | Appeal from the Randolph Circuit Court |
| v. | The Honorable Jay L. Toney, Judge |
| B.K. and Br.K., *Appellees-Petitioners.* | Trial Court Cause No. 68C01-1808-AD-138 |

**Robb, Judge.**

# Case Summary and Issue

[1] B.K. ("Father") and T.L. ("Mother") are the biological parents of J.K. but have never been married to each other. In 2019, the trial court granted a petition by Father's wife, Br.K., to adopt J.K., finding that Mother's consent to the adoption was not required. Mother challenges the trial court's ruling, raising one issue for our review: whether the trial court erred in concluding her consent to the adoption was not necessary. Concluding Br.K. proved by clear and convincing evidence that Mother's consent was not required and further proved that the adoption is in J.K.'s best interests, we affirm the trial court's order granting the adoption.

# Facts and Procedural History

[2] Father filed a paternity affidavit when J.K. was born on June 14, 2013. Mother originally had custody of J.K., but in September 2015, Father was granted custody of J.K. because of Mother's drug use. Mother was ordered to pay child support of $44.00 per week and was granted reasonable parenting time to begin after she completed a rehabilitation program. Mother signed herself out before she had completed the program, however.

[3] Sometime prior to January 2017, Mother was arrested on drug charges in Ohio. Because of this, her parenting time was modified in January 2017 to supervised parenting time. Br.K. supervised the visits and kept a log of each visit scheduled in 2018. In June 2018, Mother was in a rehabilitation facility as

required by her Ohio case and missed several visits. In July 2018, Mother was still in the rehabilitation facility but was able to attend visits that month accompanied by an employee of the facility. At the July 11 visit, Mother admitted that a few days earlier, she had used drugs and therefore "had to start the rehab process all over again." Exhibit Index, Volume 3 at 38. At the July 21 visit, Mother confronted Br.K. about Br.K. possibly wanting to adopt J.K. and said she would stab somebody if that happened. J.K. was present during this conversation, and Mother therefore spelled "stab" rather than saying the word. At the July 25 visit, Mother "mentioned she had 5 days left in phase 1 and then would be put into phase 2 in rehab again." *Id.* at 40. On July 31, Father and Br.K. learned that Mother had been arrested for a probation violation and was in jail in Ohio. The probation violation was filed as a result of Mother's failure to successfully complete the rehabilitation program. In August, Mother was ordered to participate in a secure residential treatment program (the "MonDay program"), where she remained at the time of the hearing in this case. July 25, 2018, was therefore the last time Mother participated in a visit with J.K. prior to the adoption hearing. Of the approximately forty-six visits scheduled in 2018 up to and including July 25, Mother participated in a full visit only eight times. She either arrived late, left early, or failed to attend the remaining visits.

[4] When custody of J.K. was changed from Mother to Father, Mother was ordered to pay weekly child support beginning on September 4, 2015. Mother did not make her first child support payment until December 1, 2016. She

made several payments between April and August 2017, and then did not make any further payments until October of 2018. From September 2015 to the date of the hearing in this case, Mother made ten child support payments totaling $534.00. She was found in contempt on several occasions for willfully failing to pay child support.

[5] Father has been married to Br.K. since October 2015 and they have a child together. Br.K. also has two children from a prior relationship; Father adopted those children in 2017. In August 2018, Br.K., with Father's consent, filed a petition to adopt J.K. Mother objected. Following a hearing on the petition on January 7, 2019, which Father and Br.K. attended in person and Mother attended telephonically from the MonDay facility, the trial court entered the following order:

> It is therefore ordered, adjudged and decreed by the court that . . . the Petition for Adoption is approved and granted[;] that [Father and Br.K.] have proven by clear and convincing evidence that [Mother] has failed to pay child support for more than (1) year when ordered to do [so;] that [Father and Br.K.] have proven by clear and convincing evidence that [Mother] is an unfit mother, and it is in [J.K.'s] best interest that [he] be adopted by [Br.K.; and] that [Mother's ] consent of [sic] the adoption is unnecessary.

Appealed Order at 8-9. Mother now appeals.

# Discussion and Decision

# I. Standard of Review

"When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Rust v. Lawson*, 714 N.E.2d 769, 771 (Ind. Ct. App. 1999), *trans. denied*. We presume the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018).

Where, as here, the trial court has made findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and second, whether the findings support the judgment. *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 52(A) (providing that where the trial court has made findings of fact and conclusions thereon, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Factual findings "are clearly erroneous if the record lacks any evidence or reasonable inferences to support them [and] . . . [a] judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *T.W.*, 859 N.E.2d at 1217.

# II. Necessity of Mother's Consent

Indiana Code section 31-19-9-1 states generally that a petition to adopt a child who is less than eighteen years of age may be granted only if written consent to

the adoption has been executed by certain persons, including, as relevant to this case, the mother of a child born out of wedlock. Ind. Code § 31-19-9-1(a)(2). However, Indiana Code section 31-19-9-8(a) provides that consent to adoption which may otherwise be required is *not* required from any of the following:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent: . . .
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * *
>
> (11) A parent if:
> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Br.K., as the party seeking to adopt and therefore bearing the burden of proof, must prove Mother's consent is unnecessary by clear and convincing evidence. Ind. Code § 31-19-10-0.5; *In re Adoption of J.S.S.*, 61 N.E.3d 394, 397 (Ind. Ct. App. 2016).

[9] The trial court found that Mother's consent to the adoption was not required because she had failed to pay child support for at least one year when ordered to do so, specifically finding that Mother was ordered to pay $44.00 per week in child support beginning September 4, 2015, but did not make her first payment

until December 1, 2016; made seven payments totaling $494.00 from December 1, 2016 to August 18, 2017; made no payments from August 18, 2017 until October 4, 2018; and then made three payments totaling $40.00 from October 4, 2018 to December 7, 2018. The trial court also found that Mother's consent to the adoption was not required because Mother was an unfit parent and that it was in J.K.'s best interests to be adopted by Br.K. The trial court specifically found that Mother used drugs, including at least once before a visit with J.K. and also while staying at a rehabilitation center; that Mother was inconsistent in exercising her parenting time with J.K.; that in the presence of J.K., Mother threatened to "stab" anyone who tried to adopt J.K.; and that Mother has been incarcerated several times.

[10] Mother contends the trial court erred in finding that her consent was unnecessary due to her failure to pay child support because there was no showing that she was *able* to pay child support. She also contends the trial court erred in finding her consent was unnecessary because she is an unfit parent, challenging several of the trial court's factual findings and arguing the trial court failed to consider evidence of changed conditions since the petition was filed.

## A. Failure to Provide Care and Support

[11] When considering whether a parent has knowingly failed to support a child for a period of at least one year, "the relevant time period is not limited to either the year preceding the hearing or the year preceding the petition for adoption, but is any year in which the parent had an obligation and the ability to provide

support, but failed to do so." *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1255 (Ind. Ct. App. 2013), *trans. denied*. There is no question there are at least two such periods during which Mother did not provide support for J.K. (September 4, 2015 to December 1, 2016 and August 18, 2017 to October 4, 2018). Mother conceded as much at the hearing. *See* Transcript, Volume 2 at 52-53.

[12] In addition to showing the failure to support, however, the petitioner for adoption must show "that the non-custodial parent had the ability to make the payments which [s]he failed to make." *In re Adoption of M.S.*, 10 N.E.3d 1272, 1280 (Ind. Ct. App. 2014). To determine that ability, it is necessary to consider the totality of the circumstances. *Id.*

[13] Mother claims there is no evidence of her ability to pay the court-ordered child support. Indeed, there was no specific testimony about Mother's employment or resources and the trial court made no findings regarding her ability to pay. However, there was testimony that in a child support case between Father and Mother, Mother was held in contempt for failure to pay child support, a fact that Mother does not dispute. *See* Tr., Vol. 2 at 54 (Mother testifying that some of her incarcerations were due to non-payment of child support). The trial court also took judicial notice of the record of the child support proceedings at Father's request. *See id.* at 11-12. That record contains orders finding Mother in contempt for "willfully failing to pay child support as ordered." Appellee(s)' Appendix, Volume 2 at 12; *see also id.* at 3, 5, 6, and 10 (orders finding Mother remained in contempt for willfully failing to pay child support after the original finding). Such a finding required proof that Mother had the ability to pay or

gain employment but failed to do so. *See Woodward v. Norton*, 939 N.E.2d 657, 662 (Ind. Ct. App. 2010) ("To find a party in contempt for failure to pay child support or child support-related obligations, the trial court must find that the party had the ability to pay child support and that the failure to do so was willful.").[1]

[14] Accordingly, Br.K. proved by clear and convincing evidence that for a period of at least one year, Mother knowingly failed to provide for the care and support of J.K. as ordered by the court when she was able to do so. The trial court's decision that Mother's consent to the adoption was not necessary is therefore not clearly erroneous.

## B. Parental Unfitness

[15] Because we have concluded that the trial court properly relied on the failure to support subsection to dispense with Mother's consent, we need not address the other ground found by the trial court. *See In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014) (explaining that because Indiana Code section 31-19-9-8(a) is

---

[1] Although not evidence, the proposed findings Mother submitted to the trial court include a discussion of the requirements of the failure to support exception and state:

> In 2016, [Mother] was charged with civil contempt for not paying child support. . . . [O]n February 6, 2017, [the] court did sentence [Mother] to jail for 'continued contempt of court.' In order to find [Mother] in contempt, the court had to find that she had the ability to pay or gain employment and failed to do so. Therefore, [Br.K.] has proven that this adoption does meet that standard by virtue of the Court's finding of contempt.

Appellant's Appendix, Volume 2 at 49 (internal citation omitted).

written in the disjunctive, "the existence of any one of the circumstances provides sufficient ground to dispense with consent" and we need address only one of the subsections relied upon by the trial court if it was sufficient to conclude that consent was not required). Nonetheless, in the interest of completeness and in recognition of the serious consequences for Mother if her consent is dispensed with, we briefly address the second ground on which the trial court based its decision: parental unfitness.

[16] Although the statute does not provide a definition of "unfit," we have observed that it is defined as "[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." *In re Adoption of M.L.*, 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012) (quoting Black's Law Dictionary 1564 (8th ed. 2004)). We have also observed that termination cases can provide useful guidance as to what makes a parent "unfit" because termination cases also strike a balance between parental rights and the best interests of the child. *Id*. In termination cases, we consider factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a special needs child to determine whether a parent was unfit. *Id*. A parent's criminal history may also be relevant to whether a parent is unfit. *In re Adoption of D.M.*, 82 N.E.3d 354, 359 (Ind. Ct. App. 2017).

[17] Mother contends that several of the trial court's findings regarding her unfitness are erroneous. For instance, she claims the trial court's finding 77, that "[o]ut of the eighty (80) scheduled visits since January, 2018, [Mother] has failed to

attend, arrived late or left early for 90% of her visits[,]" Appealed Order at 7, is "skewed" because it does not acknowledge that many of those missed visits were because she was in rehab or jail, Appellant's Brief at 9. Mother may have been unable to attend those visits, but the fact remains that she missed scheduled visits and was in rehab or jail because she chose drugs over her child. Even if we do not consider any of the findings Mother challenges as incorrect,[2] there are still ample findings on the record to support the trial court's conclusion that Mother is unfit and adoption is in J.K.'s best interest.

[18] Mother also contends that the trial court failed to credit her for the "substantial progress" she has made, pointing to the fact that she was "working on rehab" since at least June 6, 2018, and that "she was in the MonDay program." *Id.* at 9-10. It is less than clear from the record, but it appears that Mother was in a rehabilitation program in 2018 as a condition of probation in her drug case and that she was ordered to participate in the MonDay program – a residential facility which she is not allowed to leave voluntarily – as a consequence of violating her probation. *See* Tr., Vol. 2 at 54-55 (Mother testifying that she violated her probation by not successfully completing the rehabilitation program and was currently sentenced to the MonDay program for that probation violation). Thus, Mother is not entitled to "credit" for seeking treatment when it appears it was imposed upon her. Moreover, Mother admitted she historically "put drugs before [her] son," *id.* at 59, and the

---

[2] Mother also specifically challenges findings 66, 68, and 72.

parenting and substance abuse classes and employment training she has taken during the MonDay program have yet to prove they will bear fruit, as she was still in the program at the time of the hearing and would be for at least another month. And after leaving the MonDay program, she was going to a residential treatment facility for three months.

[19] For over three years, Mother only minimally supported her son, was inconsistent in visiting him, and repeatedly made choices that did not put her son's interests first, as reflected by her criminal history. Based on the record before us, the trial court's determination that Mother's consent was not necessary because she is an unfit parent is not clearly erroneous.

## C. Best Interests

[20] Although Mother does not specifically challenge the trial court's conclusion that adoption is in J.K.'s best interests, a petition for adoption can only be granted if it is in the best interests of the child. *In re Adoption of O.R.*, 16 N.E.3d at 974. Here the trial court concluded that adoption is in J.K.'s best interests because J.K. has been cared for virtually his entire life by Father and Br.K., Father provides financial support and Br.K. provides care for J.K. and the household, Mother has not had the day-to-day care of J.K. since 2015 and Mother and J.K.'s contact has been minimal and inconsistent since then, J.K. exhibits negative and regressive behavior after visits with Mother, and Br.K. has the ability to help Father raise J.K. and to furnish suitable support and education for him. The record supports the trial court's conclusion that Br.K.'s adoption of J.K. is in the child's best interests.

# Conclusion

The trial court did not err in determining that Mother's consent to J.K.'s adoption by Br.K. was not required or in determining that the adoption was in J.K.'s best interests. Accordingly, the judgment of the trial court granting the adoption is affirmed.

Affirmed.

Mathias, J., and Pyle, J., concur.