**Helbert D. SCOTT & Geraldo Soto, Appellants–Defendants,**

**v.**

**STATE of Indiana, Appellee.**

**No. 3–480A111.**

Court of Appeals of Indiana, Third District.

Sept. 22, 1980.

Rehearing Denied Oct. 24, 1980.

Dolores Goldman, Merrillville, for appellants defendants.

Theodore L. Sendak, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Helbert Scott and Geraldo Soto were found guilty by a jury of criminal deviate

conduct.[1]  Both defendants were sentenced to the Indiana Department of Correction for a period of six years.

On appeal, Scott and Soto raise four issues for our review:

(1) Did the trial court err in denying Scott and Soto's motions for directed verdicts?

(2) Was there sufficient evidence to support the jury's verdict?

(3) Were Scott and Soto denied a fair trial by the trial court's refusal to grant Soto's motion for severance?

(4) Did the trial court err in denying Soto's objection to the testimony of the victim's treating physician who was unable to identify the victim at trial?

We affirm.

### I.

### Directed Verdict

■   Scott and Soto contend that the trial court erred in denying their motions for directed verdicts at the close of the State's case–in–chief.  A trial court's refusal to direct a verdict is proper if there is sufficient evidence to support the verdict in a criminal case.  *Perry v. State* (1980), Ind. App., 401 N.E.2d 792, 794.  As discussed in the next section of this opinion, there is

sufficient evidence in the record to support the convictions of Scott and Soto.  Additionally, Scott and Soto waived any error by presenting evidence on their behalf after their motions were denied.  *Love v. State* (1980), Ind., 400 N.E.2d 1371, 1374.

### II.

### Sufficiency of Evidence

■   Scott and Soto contend that there was insufficient evidence to support their convictions.  When the sufficiency of the evidence is challenged, this Court will consider only that evidence which is most favorable to the State with all logical and reasonable inferences that may be drawn therefrom.  The judgment will be affirmed if there is substantial evidence of probative value that supports the jury's verdict.  This Court cannot weigh the evidence or judge the credibility of the witnesses in its review.  *Scott v. State* (1980), Ind.App., 404 N.E.2d 1190, 1193 94.

■   The evidence most favorable to the State reveals that during the early morning hours of March 26, 1979, Scott, Soto, Louis Mitchell, and Claude Fisher bound and gagged victim with bed sheets, forcibly removed his underpants, inserted a toothbrush in his rectum, and forced the victim to submit to anal intercourse.  This incident

---

1.  IC 1971, 35–42–4–2 (Burns Code Ed., Repl. 1979)–

"Criminal deviate conduct.–(a) A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

"(1) The other person is compelled by force or imminent threat of force;

"(2) The other person is unaware that the conduct is occurring;  or

"(3) The other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct, a class B felony.  However, the offense is a class A felony if it is committed by using or threatening the use of deadly force or while armed with a deadly weapon.

"(b) A person who knowingly or intentionally causes penetration, by an object or any

other means, of the sex organ or anus of another person when:

"(1) The other person is compelled by force or imminent threat of force;

"(2) The other person is unaware that the conduct is occurring;  or

"(3) The other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct, a class B felony.  However, the offense is a class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon."

"Deviate sexual conduct" is defined as "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person."  IC 1971, 35–41–1–2 (Burns Code Ed., Repl. 1979).

occurred while the victim and his assailants were incarcerated in the same cell of the Lake County Jail. The victim identified Scott and Soto at trial as two of the participants in the incident. The uncorroborated testimony of the victim is sufficient to sustain a conviction for criminal deviate conduct. *Riddle v. State* (1980), Ind., 402 N.E.2d 958, 961; *Birch v. State* (1980), Ind. App., 401 N.E.2d 750, 751.

Scott and Soto direct us to *Meadows v. State* (1968), 252 Ind. 1, 238 N.E.2d 281, in which a sodomy conviction which rested solely on the uncorroborated testimony of the prosecuting witness was reversed for an insufficiency of evidence. In *Meadows*, uncorroborated testimony of the prosecuting witness was not "clear and convincing" in that he was a mental patient at the time of the alleged incident and at trial, he testified alternately that the defendant did and did not commit an act of sodomy, he failed to report the incident for over three months, and he could not remember the day of the alleged incident. Scott and Soto attempt to draw similarities between the prosecuting witness in *Meadows* and the victim in the present case, who testified that he had been a patient in a mental institution on two occasions, he waited nearly two days to report the incident, and he was uncertain as to the date on which he gave a voluntary statement to Captain Longfellow.

We reject Scott and Soto's reliance on *Meadows*. First, *Meadows* applies only to cases in which the prosecuting witness' testimony is uncorroborated and equivocal. *Jones v. State* (1978), 267 Ind. 680, 683–84, 372 N.E.2d 1182, 1184. In the present case, the victim's testimony was corroborated by Officer Woodkee, the medical officer for the Lake County Jail, and Dr. Gutierrez, who examined the victim and found a one inch laceration on the victim's rectum. Dr. Gutierrez stated that in his medical opinion, the laceration was caused by an act of anal intercourse. Additionally, the victim's testimony was unequivocal. The victim recalled the time and details of the incident

with specificity. The inconsistency in dates on which the victim gave a voluntary statement cannot be viewed as a fatal defect in his testimony. There was no unreasonable delay in reporting the incident. While in court on the following day for an unrelated matter, the victim reported the incident to Judge Clement and stated that he was unable to do so any sooner because his assailants had threatened him with bodily harm if he told jail personnel. The victim's mental history is hardly comparable to the mental instability displayed by the prosecuting witness in *Meadows*. The victim in the present case was placed in a mental institution twice for a short period merely for observation of a nervous condition. He was released both times as being mentally sound. Thus, the similarity between *Meadows* and the present case is at best tenuous.

### III.

#### Severance

Scott and Soto contend that they were denied a fair trial by the trial court's refusal to grant Soto's motion for severance of trials. A third defendant in the case, Louis Mitchell, failed to appear on the second day of trial when the State was to begin its case-in-chief. Mitchell was present on the first day of trial when the jury was impanelled. When the trial court indicated that the trial would be continued in Mitchell's absence, Soto orally moved for a separate trial from Mitchell. Scott requested that a mistrial be declared. Both argued that Mitchell's absence may be viewed by the jury as an admission of guilt, and, for a jointly prosecuted crime, that admission of guilt may be imputed to the remaining co-defendants, Scott and Soto. The trial court denied both motions.

It is first noted that Scott waived any error that may have been committed in the trial court's refusal to order separate trials. The record reveals that Scott moved only for a mistrial but failed to join in Soto's severance motion. Where a defend-

ant fails to request a separate trial, he cannot rely on a codefendant's motion for severance to preserve an error for appellate review. *Morgan v. State* (1980), Ind., 400 N.E.2d 111, 114.

██ The severance issue properly preserved for review by Soto is one of first impression in this jurisdiction. Guidance in resolving this issue may be found in *Webb v. State* (1980), Ind.App., 403 N.E.2d 359. In *Webb*, a codefendant (Cox) changed his plea from not guilty to guilty during the presentation of the State's case and testified against the other codefendant (Webb). On appeal, Webb argued that Cox's mid-trial admission of guilt placed Webb in the danger of being found guilty "by association." This Court rejected Webb's contention and held that the change of plea did not prejudice Webb's right to a fair trial. Among the circumstances to be considered in determining whether a codefendant was deprived of a fair trial are "the strength of the evidence of guilt and the sufficiency of the cautionary instruction, if one is given." *Webb, supra*, at 361, fn. 3. Sufficient evidence independent of any inference of guilt that may have arisen from the mid-trial change of plea was found to support Webb's conviction.

██ The same inquiry will be made in the present case. As discussed earlier in this opinion, Soto was implicated in participating in the offense by the victim's direct testimony, which was corroborated by the findings of the treating physician and the medical officer of the county jail. This evidence, in itself, was sufficient to sustain Soto's conviction, even without any inference of guilt by association that may have

arisen by Mitchell's absence from the remainder of the trial. If an inference of guilt existed in the jurors' minds, it did not reach a prejudicial level. In *Webb*, Cox actually admitted his guilt before the jury, and this Court found that there was no real threat of finding Webb guilty by association. In the present case, Mitchell never admitted his guilt in the perpetration of the crime for which Soto and he were charged. Mitchell's attorney remained in the Courtroom throughout the trial and pursued Mitchell's interest by cross-examining the State's witnesses and presenting final argument.[2] Thus, Soto has failed to demonstrate that he was prejudiced by Mitchell's absence.

██ In his brief, Soto contends that the trial court erred in failing to admonish the jury not to use Mitchell's absence as an admission of guilt that could also be imputed to the remaining codefendants. At trial, the State suggested that a cautionary instruction regarding Mitchell's absence would protect Soto's right to a fair trial. The trial court agreed, but the record reveals that such an instruction was never given. Soto failed to object when the trial was continued without a cautionary instruction to the jury. Reversible error cannot be found when a party fails to object at trial to the adequacy of or the trial court's failure to give a cautionary instruction. *Jackson v. State* (1980), Ind., 402 N.E.2d 947, 951; *Cook v. State* (1980), Ind.App., 403 N.E.2d 860, 867.[3]

## IV.

### Identification

Scott and Soto contend that the trial court erred in permitting Dr. Gutierrez, the

**2.** Even if Mitchell's attorney failed to pursue a vigorous defense, Soto would not have been entitled to a separate trial. *Garrison v. State* (1967), 249 Ind. 206, 210, 231 N.E.2d 243, 246. *See also, McChristian v. State* (1979), Ind., 396 N.E.2d 356; *Bluitt v. State* (1978), Ind., 381 N.E.2d 458; *Henry v. State* (1978), Ind., 379 N.E.2d 132; *Frith v. State* (1975), 263 Ind. 100, 325 N.E.2d 186. In these cases, the denial of a motion for severance was upheld even though it was alleged that a codefendant's conduct or statements subjected the other codefendant to being found guilty by association.

**3.** The trial court was not obligated to give a cautionary instruction concerning Mitchell's absence and its effect on the remaining codefendants. This Court held in *Webb, supra*, citing authority from other jurisdictions and *Winker v. State* (1977), Ind.App., 367 N.E.2d 26, that a cautionary instruction, which admonishes the jury not to use a defendant's mid-trial admission of guilt against a codefendant, is not mandatory if no prejudice to the codefendant could be established. A cautionary instruction was not given in *Webb*.

victim's treating physician, to testify after Gutierrez stated that he could not identify the victim at trial. Gutierrez testified that he examined and treated the victim at the Crown Point Clinic on March 28, 1979, two days after the incident. Officer Woodkee, who took the victim to the clinic, informed Gutierrez as to the identity of the victim. Gutierrez did not have a physical description of the victim in his medical records. Based on this inability to identify the victim as the person Gutierrez treated on March 28, 1979, Scott and Soto argue that the State failed to establish a proper foundation connecting the victim to Gutierrez's examination.

 Scott again waived any error that may have occurred in permitting Gutierrez to testify by failing to object to his testimony at trial. The record indicates that only Soto objected to the admission of Gutierrez's testimony. To preserve an error for appellate review, a party must raise the proper objection at trial. *Drake v. State* (1979), Ind., 397 N.E.2d 600, 601; *King v. State* (1979), Ind.App., 397 N.E.2d 1260, 1271. Scott cannot rely on an objection made by a codefendant to preserve an error. *Morgan v. State* (1980), Ind., 400 N.E.2d 111, 114.

The identity of a person who was examined by a physician and about whom the physician testified at trial as an expert witness may be established by circumstantial evidence. *Maxwell v. State* (1970), 254 Ind. 490, 495–96, 260 N.E.2d 787, 791, *cert. denied*, (1971), 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863. The record reveals that the identity of the person Gutierrez examined and treated on March 28, 1979, was sufficiently established by circumstantial evidence. Officer Woodkee testified that the victim was the only inmate he transported to the Crown Point Clinic on March 28, 1979. Woodkee knew the victim and described the victim's physical appearance in detail. Gutierrez stated that he was the Medical Director of the Lake County Jail on March 28, 1979, and he practiced medicine in Crown Point. On the day in question, he examined and treated an inmate of the Lake County Jail who was identified to him as the victim by the officer who brought him to the Crown Point Clinic. The victim testified that he was examined by a physician whose name he did not know in Crown Point a few days after the incident. This evidence provided a sufficient foundation for the admission of Gutierrez's testimony. Any lack of certainty regarding the identity of the victim merely goes to the weight of Gutierrez's testimony and not its admissibility.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.