Ken CATENACCI, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 681S175.

Supreme Court of Indiana.

July 12, 1982.

Ray Warren Robison, Bedford, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Ken Catenacci, was convicted by a jury of two counts of unlawful deviate conduct, class B felonies. Ind.Code § 35–42–4–2(a) (Burns 1979 Repl.). He was sentenced to concurrent terms of twenty years in the Indiana Department of Correction for his respective crimes. In his direct appeal, he presents concomitant issues for our review:

1. Whether the trial court erred when it overruled defendant's motion for judgment on the evidence; and

2. Whether the evidence was sufficient to support the jury's conclusion that, beyond a reasonable doubt, defendant committed the crimes.

The record reveals that on or about November 6, 1980, L. B. and H. S. were forced to commit fellatio on each other in the shower of the Lawrence County Jail. Revelation of the incident to jail personnel prompted an investigation which culminated in defendant's convictions for the crimes at issue.

## I.

Defendant maintains the trial court erred in overruling his motion for judgment on the evidence. A trial court's refusal to direct a verdict is proper if there is sufficient evidence to support the verdict. *Scott v. State*, (1980) Ind.App., 409 N.E.2d 1184; *Perry v. State*, (1980) Ind.App., 401 N.E.2d 792. Inasmuch as we hereinafter find the evidence is sufficient to support the defendant's convictions, the trial court did not err in overruling defendant's motion.

## II.

Defendant maintains the evidence is insufficient to support his convictions. Specifically, he argues there is no indication that L. B. and H. S. were "compelled by force or imminent threat of force" to commit the acts of fellatio, as is necessary to sustain a conviction for unlawful deviate conduct. Ind.Code § 35–42–4–2(a)(1), *supra*.

It is well settled that when this Court is confronted with a challenge to the sufficiency of the evidence, we may not weigh the evidence or judge the credibility of witnesses. Rather, we must examine the

evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences which may be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the conclusion that defendant was guilty beyond a reasonable doubt, it will not be disturbed. *Schultz v. State*, (1981) Ind., 422 N.E.2d 1176; *Moon v. State*, (1981) Ind., 419 N.E.2d 740.

The record reveals that during the early days of November, 1980, relations between prisoners incarcerated at the Lawrence County Jail were marked by hostility. L. B., who was newly incarcerated, was confronted by defendant, Jim Fitzgerald, and Randall Deckard, who informed him that he was a "punk" and that they were going to "teach him a lesson." Then, both defendant and Fitzgerald each struck L. B. once.

In the days immediately following that incident, according to L. B., he was required by defendant to stand on his head in the shower, wash the defendant's socks, stand in his cell for periods of five to ten minutes with his arms extended parallel to the floor while he held a cup of water in each hand, and to lick up any water off the floor which he spilled in the process. Defendant also required L. B. to address him as "Sir," to clean his cellblock, and to pay for his commissary costs, including cigarettes, candy, and soft drinks. Defendant also took L. B. into the jail shower and requested that L. B. shave his own head, with the exception of a three-inch diameter circle of hair on the top of L. B.'s head. L. B. testified he acceded to these various requests because he was afraid defendant would "do something" to him if he refused.

According to L. B., defendant also made H. S. clean his cellblock. H. S. testified that the evening prior to the commission of the crimes in question, defendant and another prisoner, Randy Deckard, threatened him. H. S. also stated that he witnessed L. B.'s haircut; he testified defendant told L. B. that "he'd give him until midnight to shave his head or else."

That same evening, prisoner Deckard called H. S. out of his cellblock and told him to make a "shank," a weapon composed of a toothbrush handle with razor blades melded into the handle. H. S. made the weapon and gave it to Deckard, who returned it to him and requested H. S. to cut him—Deckard—with the weapon. H. S. refused, as did L. B. Deckard then dropped his request and told L. B. to keep the shank. L. B., however, destroyed the weapon.

The following day, defendant and Deckard confronted L. B. and H. S. about the weapon. L. B. confessed that the weapon had been destroyed, whereupon defendant "got mad" and ordered both L. B. and H. S. "to strip." When H. S. hesitated, defendant informed him: "Either strip or I'm going to run your head through them bars."

The testimony of H. S. and L. B. coincide with respect to the events that followed. Both testified that once they were naked, the defendant requested that they engage in anal intercourse. Both refused, and defendant briefly engaged H. S. in fisticuffs. Thereafter, H. S., who lost the physical struggle, got up off the floor and, as per defendant's request engaged L. B. in mutual acts of fellatio. L. B. testified that he cooperated because he "figured if ___ [H. B.] got whipped because he didn't do it I was going to get the same." Once they had completed the acts, defendant brought them some clothes. Later, when L. B. was questioned by jail personnel about his haircut, he ultimately related the events heretofore described.

Defendant tacitly concedes that pursuant to the standard and scope of review incumbent upon this Court, the evidence is sufficient to support his convictions; he acknowledges that a conviction for unlawful deviate conduct may be sustained solely upon the uncorroborated testimony of the victim. *Calbert v. State*, (1981) Ind., 418 N.E.2d 1158; *Riddle v. State*, (1980) Ind., 402 N.E.2d 958. Defendant maintains, however, that the convictions cannot be sustained for various reasons.

First, he argues that there was no evidence to indicate the victims resisted the act of fellatio and that it occurred against their will, as is required to sustain the con-

victions. *Jenkins v. State*, (1978) 267 Ind. 543, 372 N.E.2d 166; *Birch v. State*, (1980) Ind.App., 401 N.E.2d 750. The preceding evidence, however, belies defendant's claim.

▮ The record reveals defendant, who was angry, ordered the victims to remove their clothes and engage in anal intercourse and fellatio. When the two men refused, the defendant struggled with H. S., hitting and kicking him. L. B. testified that he was afraid defendant would also "whip" him if he did not accede to defendant's demands. These events, which followed on the heels of repeated physical abuse and intimidation of H. S. and L. B., are sufficient to support the jury's conclusion that the victims' acquiescence was the product of force, fear, and the threat of force. *Jenkins v. State, supra.* The degree of resistance required of the victims was a matter for the jury to determine, based on the circumstances surrounding the incident. *Id.; Beard v. State*, (1975) 262 Ind. 643, 323 N.E.2d 216.

Defendant also maintains the evidence establishes that the force employed against the victims came from other prisoners, in addition to himself. The testimony of the victims, as corroborated by other prisoners, reveals that while other prisoners participated in the physical harassment of L. B. and H. S. prior to the acts of fellatio, only defendant's use of force and fear prompted the victims to commit the acts. Testimony unequivocally established only defendant was present when the acts occurred.

Defendant also contends that the testimony of H. S. must be discounted because H. S. had previously received psychiatric treatment and that, at the time the acts of fellatio occurred, H. S. was suffering periodic hallucinations and blackouts. Defendant relies on *Meadows v. State*, (1968) 252 Ind. 1, 238 N.E.2d 281, to support his contention.

In *Meadows*, this Court reversed a conviction where the evidence upon which it was based consisted solely of the uncorroborated testimony of a mental patient who had failed to report the alleged offense until four months after its commission. The testimony was fraught with inconsistencies, exhibited the effects of "coaching," and was marked by memory lapses. Inasmuch as the victim's testimony had been preceded by a very cursory competency examination, a new trial was ordered. *Compare, Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658; *Penn v. State*, (1957) 237 Ind. 374, 146 N.E.2d 240.

▮ Unlike *Meadows*, defendant's conviction does not rest solely on the uncorroborated testimony of the victim. H. S.'s version of the events paralleled L. B.'s recitation of the facts; both men's testimony was buttressed by that of other prisoners. Furthermore, H. S. testified that although he had suffered hallucinations and blackouts while in jail, none of those occurred during the week when the acts of fellatio occurred; to the extent that his statement contradicted an earlier statement regarding the mental disorders, the matter was one for the jury to evaluate. Inasmuch as H. S.'s testimony was corroborated, the circumstances of this case take H. S.'s testimony outside the purview of *Meadows*. *Jones v. State*, (1978) 267 Ind. 680, 372 N.E.2d 1182; *Scott v. State*, (1980) Ind.App., 409 N.E.2d 1184.

Defendant also challenges the sufficiency of the evidence on bases which inherently constitute an invitation to reweigh the evidence. He argues that although the cell area is monitored by television and listening devices, no prisoner ever reported the incident nor did jail personnel notice any strange occurrences. Lawrence County Deputy Sheriff Jack Dorsett, however, testified that the monitoring devices are sometimes shut off and that the person in charge of security also has myriad other duties which occupy his attention. At the same time, the hostile atmosphere among the prisoners, one marked by the use of force and intimidation, was not conducive to revelations concerning the sexual abuse.

▮ Defendant also challenges the credibility of the witnesses insofar as the exact date of the offense is concerned. The various testimony regarding the date was marked by inexactitude and conflicts; the

discrepancies included H. S.'s testimony that it occurred on November 7, L. B.'s inability to state whether the incident occurred on November 5, 6, or 7, and Dorsett's testimony that it occurred on November 6. Insofar as the general credibility of the witnesses was concerned, the discrepancies were matters for the jury to evaluate. *Quassey v. State*, (1975) 167 Ind.App. 205, 338 N.E.2d 283. The precise time and date of the offense, however, was not a material element, for no alibi defense had been interposed. *Quillen v. State*, (1979) Ind., 391 N.E.2d 817.

Finally, defendant also challenges the victims' credibility and testimony that the acts of fellatio occurred via force on the basis that, notwithstanding testimony that the "shank" had been destroyed, several shanks were found in the cells occupied by H. S. and L. B. The conflict in the testimony strikes at the credibility of the victims, a matter for the jury to evaluate. The jury was fully informed of the existence of the weapons; based on the factual circumstances surrounding the sexual acts, however, it concluded that the fellatio did occur unwillingly.

Defendant's contention that the evidence was insufficient to support the convictions must fail. The evidence most favorable to the state is sufficient to sustain the conclusion that, beyond a reasonable doubt, he committed the crimes charged. *Jenkins v. State, supra; Scott v. State, supra.*

For all the foregoing reasons, there was no trial court error and its judgments are affirmed.

Judgments affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.