


FILED

Apr 08 2026, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-PL-225

## Regina Geels,

*Appellant (Defendant/Counterclaimant below),*

–v–

## Lindsay Flottemesch, Mackenzi Hatfield, and Stephanie Malinowski as Guardian for Marley Malinowski,

*Appellees (Plaintiffs/Counterclaim Defendants below).*

---

Argued: November 18, 2025 | Decided: April 8, 2026

Appeal from the Allen Superior Court
No. 02D09-2107-PL-284
The Honorable David J. Avery, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-PL-2911

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Slaughter dissents, believing transfer should be denied.

**Goff, Justice.**

The distribution of proceeds from a life-insurance policy may bring problems when the policyholder's intended beneficiary does not match the beneficiary named in the policy itself. To address this problem, federal law typically requires that the proceeds go to the beneficiary named in the plan documents while state law may provide more equitable remedies. Here, a man named his sister as the beneficiary of his life-insurance policies with instructions to distribute the proceeds to his daughters. Despite these instructions, the sister claims the proceeds for herself. The issues are (1) whether the sister waived her federal-preemption defense by failing to raise it at the trial-court level, and (2) whether the trial court erred in imposing a constructive trust in favor of the daughters after finding that the sister had breached her fiduciary duty to her deceased brother. Concluding that the sister waived her federal-preemption defense and that the trial court did not err in finding that she breached her fiduciary duty, we affirm.

# Facts and Procedural History

At the time of his death in 2021, David Malinowski (the Father) had three children (whom we refer to collectively as the Daughters): thirty-six-year-old Lindsay Flottemesch and thirty-three-year-old Mackenzi Hatfield (from Father's first marriage) and nine-year-old Marley Malinowski (from Father's second marriage).[1] Having divorced Marley's mother, Stephanie, Father was not married at the time he died. Father had two life-insurance policies through his employer, both of which were issued by Metropolitan Life Insurance Company (MetLife) and had a total benefit value of $150,000.

Three years prior to his death, Father asked his sister, Regina Geels (Aunt), to help him hire attorneys for his estate planning and to represent

---

[1] Marley's mother, Stephanie, participates as guardian for Marley who died in January 2024. *Geels v. Flottemesch*, 259 N.E.3d 1003, 1005 n.2 (Ind. Ct. App. 2025).

him in a child-custody dispute with Marley's mother. In June 2018, Father executed a will and durable power of attorney, appointing Aunt as his attorney-in-fact. That same month, Mackenzi texted her Aunt to say that, according to Father, he had instructed the Aunt to split his life-insurance benefits among the Daughters with Marley's share held in trust. Aunt responded, "Yes I am convincing him of [a] trust to protect his assets and avoid court with [Stephanie]," adding that "it will pay out when [Marley] is 18" and "will allow you and Lindsay to get yours without taxes." Appellant's App. Vol. 2, p. 27. The following month, Aunt started paying Father's medical bills, rent, child support, and utility bills. In short, Aunt appeared to be "acting as a de facto guardian" over Father's financial affairs. *Id.*

In January 2020, Father was hospitalized and appointed Aunt as his health-care representative. Father and Aunt also became joint owners of a bank account so Aunt could make transactions on his behalf. At some point in the summer of 2020, Father asked his friend to sell Father's car, and Aunt requested the friend mail her the money from the sale which the friend declined to do. In July 2020, while Father was hospitalized again, Aunt terminated Father's lease and moved his belongings and his dog out of his residence without his knowledge or permission. Although Father was unhappy with Aunt's decision to end his lease, he took no action to counter the decision. Upon release from the hospital, Father lived with Aunt and her husband from August to early September 2020. He then lived with Lindsay for about a month before staying with friends until he moved into his own apartment sometime around December 2020 or January 2021. On January 1, 2021, Father designated Aunt as the sole beneficiary of his two MetLife insurance policies. He died in his apartment on June 14, 2021, having succumbed to congestive heart failure.

On June 29, Aunt submitted a claim to MetLife for the life-insurance proceeds. Three days later, Lindsay contacted MetLife and informed it that "there was litigation as to the life insurance policies." *Id.* at 30. On July 9, Daughters filed a petition to construe the will and impose a constructive trust over the proceeds of Father's life-insurance policies, naming Aunt and MetLife as defendants. Daughters alleged that Father intended for Aunt to hold the benefits as trustee for the Daughters. And to

the extent the beneficiary designation on the life-insurance policies was Aunt's alone, the Daughters contended, the designation was the result of undue influence or fraud. MetLife filed an answer in which it stated as an affirmative defense that the Daughters' claims against MetLife arose under the federal Employee Retirement Income Security Act (ERISA), and that ERISA preempts any claims or remedies not expressly covered by the act. Aunt also filed an answer. But rather than raising an affirmative defense under ERISA, she denied Daughters' claim that her beneficiary designation was the result of undue influence or fraud and raised a counterclaim against Daughters for defamation.

All parties subsequently filed an agreed motion for interpleader which stated that the life-insurance policies were governed by ERISA. The trial court granted the motion and dismissed MetLife as a defendant after it deposited the proceeds with the clerk of the court. After a failed mediation, the case proceeded to a bench trial.

On August 29, 2023, the trial court entered detailed findings of fact and conclusions of law. Applying a preponderance-of-the-evidence standard, the court found that, although Aunt's beneficiary designation was *not* the result of undue influence or fraud, the "life insurance proceeds in the amount of $150,000.00 are subject to a constructive trust on behalf" of Daughters. *Id.* at 50. Father and Aunt had a fiduciary relationship, and Father had "named [Aunt] the beneficiary of the life insurance policies," the court explained, "with the instruction that [Aunt] was to distribute the proceeds to his [D]aughters." *Id.* at 52. The trial court also concluded that each Daughter was entitled to one-third of the proceeds.

Aunt appealed, and a divided Court of Appeals reversed on federal-preemption grounds. *Geels v. Flottemesch*, 237 N.E.3d 674, 682 (Ind. Ct. App. 2024) (*Geels I*), *vacated*. The majority acknowledged that Aunt had not raised preemption as an affirmative defense in her answer. *Id.* at 680. But because her former codefendant, MetLife, had raised preemption in its answer, and because the parties had agreed that ERISA governed the policies in their motion for interpleader, the majority concluded that the issue was not waived. *Id.* The majority then determined that ERISA

preempts "all State laws" to the extent that those laws "relate to any employee benefit plan" covered by ERISA. *Id.* at 681 (quoting 29 U.S.C. § 1144(a)). In dissent, Judge Foley would have held that Aunt waived the federal-preemption argument. *Id.* at 683. But because he considered a preponderance-of-the-evidence standard improper, he would have remanded to the trial court to apply the "clear and convincing evidence" standard to impose a constructive trust. *Id.* We granted transfer and, in a per curiam opinion, remanded for the trial court to apply the clear-and-convincing-evidence standard. *Geels v. Flottemesch*, 243 N.E.3d 1069, 1070 (Ind. 2024) (*Geels II*). Our opinion did not address whether Aunt waived her federal-preemption defense.

On remand, the trial court determined that "the clear and convincing evidence demonstrates that the Aunt was designated as the beneficiary of [Father's] life insurance policies for the purpose of distributing the proceeds to his [D]aughters." Appealed Order at 2 (bold emphasis omitted). Beyond this determination, the court's new order simply "incorporate[d] and reinstate[d] its Order or Judgment dated August 29, 2023." *Id.* Aunt appealed again, arguing that any state-law remedies like a constructive trust were preempted by ERISA and that, even so, such remedy lacked the requisite clear and convincing evidence.

In a unanimous published opinion, the Court of Appeals again reversed on federal-preemption grounds. *Geels v. Flottemesch*, 259 N.E.3d 1003, 1005 (Ind. Ct. App. 2025) (*Geels III*). The panel cited the same reasons as its original opinion in *Geels I* to conclude that Aunt did not waive the issue. *Id*. at 1010. The panel then concluded that ERISA preempted the state-law remedy of a constructive trust, adding that it "derived" its analysis from *Geels I. Id.* at 1010 n.5. Although *Geels I* was vacated, we did not address preemption in our per curiam opinion, so the panel saw "no reason to deviate from [its] original decision." *Id.*

Daughters petitioned for transfer, which we granted, thus vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

The trial court here issued written findings of fact and conclusions of law. An appellate court "will not set aside the findings or the judgment unless they are clearly erroneous." *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006); *see also* Ind. Trial Rule 52(A). In deciding whether the findings and conclusions are clearly erroneous, we use a two-tiered analysis. *Oil Supply Co., Inc. v. Hires Parts Serv., Inc.*, 726 N.E.2d 246, 248 (Ind. 2000). First, a "trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them." *In re Adoption of T.W.*, 859 N.E.2d at 1217. Second, a "judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *Id.* This Court will not "reweigh the evidence or assess the credibility of witnesses" and will "consider only the evidence favorable to the trial court's judgment." *Kalwitz v. Est. of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005), *trans. denied*.

## Discussion and Decision

In resolving this case, our opinion first addresses whether Aunt waived her argument that federal ERISA law preempts state-law remedies like a constructive trust. We conclude that Aunt waived her preemption defense because she raised it for the first time on appeal. Second, we address whether the trial court's imposition of a constructive trust in favor of the Daughters was clearly erroneous. Because there was evidence to support the court's findings that Aunt and Father had a fiduciary relationship and that Aunt breached her fiduciary duty when she failed to distribute the proceeds to Daughters, the trial court did not err in imposing a constructive trust.

## I. Aunt waived her argument that ERISA preempts the state-law remedy of a constructive trust.

ERISA is a federal statute that "establishes minimum federal standards governing employee-benefit plans." *FMS Nephrology Partners N. Cent. Ind.*

*Dialysis Ctrs., LLC v. Meritain Health, Inc.*, 144 N.E.3d 692, 696 (Ind. 2020). ERISA provides "a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001) (quoting *Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). Specifically, ERISA directs plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). To ensure "nationally uniform plan administration," *Egelhoff*, 532 U.S. at 148, ERISA preempts or "supersede[s] any and all State laws" to the extent that those laws "relate to any employee benefit plan" covered by the statute, 29 U.S.C. § 1144(a).

Although ERISA generally preempts state-law remedies governing employee-benefit plans, ERISA preemption is a choice-of-law defense. *See Associates Inv. Co. v. Claeys*, 533 N.E.2d 1248, 1254 (Ind. Ct. App. 1989). As such, a party raising ERISA preemption should raise it as an affirmative defense in a responsive pleading or later in litigation with all parties' consent. *Id.* (citing T.R. 8(C)). A party "cannot sit idly by, permit the court to proceed under the wrong law," and then "complain because the court" did so. *Id.* And a party who raises ERISA preemption for the first time on appeal without raising it at trial waives the defense. *Id.* (declining to address ERISA preemption for the first time on appeal).

Here, Aunt waived her ERISA-preemption defense because she raised it for the first time on appeal. In her answer to Daughters' petition to impose a constructive trust over the life-insurance policies, Aunt raised no ERISA-preemption claim. *See* Appellant's App. Vol. 2, pp. 99–101. Instead, she asserted that Daughters "fail[ed] to state a cause of action upon which relief can be granted" and that MetLife knew of the "designated beneficiary" from the plan documents. *Id.* at 100–01. These responses did not alert Daughters that Aunt was raising ERISA preemption as a defense to their request for a constructive trust.

Aunt seeks to avoid waiver by arguing that MetLife's answer to the Daughters' complaint sufficiently notified them of the ERISA-preemption claim. We reject this argument. MetLife's answer stated that Daughters' claims "*against MetLife*, if any," arose under ERISA, and that, "[t]o the

extent the Complaint makes claims or seeks remedies not provided for under ERISA, those claims and remedies are pre-empted by ERISA and must be stricken." *Id.* at 96 (emphasis added). In other words, MetLife asserted the affirmative defense for itself. Just because MetLife raised ERISA preemption as an affirmative defense did not put Daughters on notice that Aunt would raise the defense as well. As far as the Daughters knew, Aunt may have had a strategic reason for choosing to apply state-law remedies instead of ERISA. By failing to expressly join in that defense, Aunt waived the issue for appellate review.

We find support for this conclusion in caselaw. In *In re Estate of Blair*, the Court of Appeals held that a party could not preserve an issue for appeal by "piggybacking" on another party's objection. 177 N.E.3d 84, 94 (Ind. Ct. App. 2021). In that case, the trial court found that a granddaughter exerted undue influence over her grandfather to facilitate the transfer of his home to her. *Id.* at 89, 91. At trial, the court played the deposition of grandfather's attorney, and the estate's personal representative objected on grounds of attorney-client privilege. *Id.* at 90–91. The granddaughter did not object. *Id.* at 90. On appeal, the Court of Appeals held that even if she had standing, the granddaughter waived any argument that playing the deposition violated attorney-client privilege because she did not join the personal representative's objection or object herself. *Id.* at 94 (citing *Fowler v. Newsom*, 90 N.E. 9, 13 (Ind. 1909)). Likewise, in *Scott v. State*, the defendant could not preserve an error for appellate review by relying on his codefendant's motion. 409 N.E.2d 1184, 1187–88 (Ind. Ct. App. 1980). The defendant and his codefendant were tried together for criminal-deviate conduct. *Id.* at 1185–86. The codefendant (unsuccessfully) moved for a separate trial, but the defendant never joined the motion. *Id.* at 1187–88. The Court of Appeals held that the defendant waived the issue because he neither moved for severance himself nor joined his codefendant's motion. *Id.*

Aunt also seeks to avoid waiver by arguing that the plan documents and the parties' motion for interpleader stipulated that ERISA governed the life-insurance policies. *See* Appellant's App. Vol. 2, p. 104. We reject this argument as well. Aunt represented to the trial court throughout the

proceedings that Indiana law, not ERISA, required judgment in her favor. In her answer to Daughters' petition to impose a constructive trust, Aunt did not raise ERISA. *See id.* at 99–101. Then at trial, Aunt argued that her designation as the beneficiary was valid "under Indiana State Law" because there was no undue influence and Father wanted to pay her back. Tr. Vol. 2, p. 6. Most notably, Aunt never mentioned ERISA in her proposed findings and conclusions and insisted she was entitled to relief under Indiana law. She argued that it is "well-settled" law in Indiana that "life insurance policies are non-probate assets and pass directly to the beneficiary as a matter of law." Appellees' App. Vol. 2, p. 12. Because the "[p]arties are bound by the theory upon which the case was tried," and because Aunt tried the case exclusively on Indiana law, she waived her preemption defense. *See Associates Inv. Co.*, 533 N.E.2d at 1254.

Having concluded that Aunt waived her ERISA-preemption defense, we turn to whether the trial court erred in imposing a constructive trust on behalf of Daughters.[2]

## II. The trial court's imposition of a constructive trust was not clearly erroneous.

The trial court's imposition of a constructive trust in favor of the Daughters was not clearly erroneous. First, the evidence supports the trial court's findings that Aunt and Father had a fiduciary relationship and that, by breaching her fiduciary duty, Aunt's actions amounted to

---

[2] Because we conclude that Aunt waived her ERISA-preemption argument, we need not address whether ERISA preemption applies after the plan administrator has distributed the proceeds. Here, the parties' agreed interpleader procedure tasked MetLife, the plan administrator, with depositing the proceeds with the court. Because the goal of ERISA is to enable "nationally uniform plan administration," *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001), it is not clear if preemption applies once the administrator has distributed the proceeds, *cf. State Farm Life v. Goecks*, 184 F. Supp. 3d 701, 702–03, 709 (W.D. Wis. 2016) (applying ERISA preemption even after the plan administrator deposited proceeds with the court as part of the interpleader action). We also need not address Daughters' argument that the law-of-the-case doctrine requires us to apply state law because Aunt waived preemption.

constructive fraud. Second, a finding of constructive fraud supports the imposition of a constructive trust.

A constructive trust is a state-law equitable remedy "available against one who through fraud or other wrongful means acquires property of another." *Kalwitz*, 822 N.E.2d at 280. A constructive trust imposes an equitable duty on a person holding title to property to convey it because "he would be unjustly enriched if he were permitted to retain it." *Id.* (quoting *Melloh v. Gladis*, 309 N.E.2d 433, 438–39 (Ind. 1974)).

A constructive trust must be established by clear and convincing evidence. *Melloh*, 309 N.E.2d at 440.[3] "Fraud constitutes an essential ingredient in a constructive trust." *Geels II*, 243 N.E.3d at 1070–71 (quoting *Hall v. Ind. Dep't of State Revenue*, 351 N.E.2d 35, 38 (Ind. Ct. App. 1976)). In the context of a constructive trust, fraud "is not confined to fraud as one might define it for purposes of criminal law." *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009). Instead, the constructive-trust "remedy is available where there is standard fraud (i.e., misrepresentation, reliance, etc.) *or* a breach of duty arising out of a confidential or fiduciary relationship." *Id.* In other words, "such fraud may be actual or constructive." *Geels II*, 243 N.E.3d at 1071 (internal quotation marks and citation omitted). While actual fraud requires intent to defraud, constructive fraud does not. *See Kalwitz*, 822 N.E.2d at 280–81. Constructive fraud can occur when there is a "breach of a duty arising from a confidential or fiduciary relation." *Id.* at 280 (quoting *Hall*, 351 N.E.2d at 38).

---

[3] The clear-and-convincing-evidence standard is an intermediate standard of proof used in cases "where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims [that] have serious social consequences or harsh or far reaching effects on individuals." *J.C.C. v. State*, 897 N.E.2d 931, 935 (Ind. 2008) (quoting *Est. of Reasor v. Putnam Cnty.*, 635 N.E.2d 153, 159–60 (Ind. 1994)).

## A.  The Existence of a Fiduciary Relationship

Here, the trial court found that "a fiduciary relationship existed" between Father and the Aunt, with the Aunt as the "superior party." Appellant's App. Vol. 2, p. 49. This finding meets the clear-and-convincing-evidence standard.

A fiduciary relationship exists when a party places such confidence in another that it results in "superiority and influence." *Kalwitz*, 822 N.E.2d at 281. Whether a fiduciary relationship exists is a question of fact for the fact finder. *Id.* In *Kalwitz*, the Court of Appeals found that a fiduciary relationship existed between parents and their adult son because of the son's long-standing management of their family farm and the parent-child relationship. *Id.* at 282. In *Morfin v. Estate of Martinez*, the Court of Appeals found a fiduciary relationship between an uncle and his deceased nephew where the uncle was the personal representative of the nephew's estate, the uncle helped the nephew obtain housing and several jobs, and witnesses described their relationship as "very close" with the uncle acting as a surrogate father to the nephew. 831 N.E.2d 791, 802 (Ind. Ct. App. 2005).

Likewise, the circumstances here—namely, their sibling relationship and the Aunt's management of Father's legal and financial affairs—support the trial court's finding of a fiduciary relationship between Aunt and Father. Father was experiencing financial difficulty and approached Aunt for help. Appellant's App. Vol. 2, p. 25. As his health worsened, Aunt and her husband paid Father's medical bills, rent, child support, utility bills, and more. *Id.* at 27. Aunt also prepared Father's taxes in 2018, 2019, and 2020. *Id.* at 28. In addition, Father and Aunt were co-owners of two bank accounts so that Aunt could make transactions on Father's behalf. *Id.* at 27, 28. Aunt also requested that Father's friend give her the money from the sale of Father's car because Father "just doesn't handle or [know] how to budget his money." *Id.* at 46.

Aside from finances, Aunt had influence over Father's legal affairs. Father executed a durable power of attorney, making Aunt his attorney-in-fact. *Id.* at 26. She helped Father hire an attorney to litigate his child-custody case over Marley. *Id.* at 25. He also appointed Aunt to be the

executor of his estate. *Id.* at 32. Finally, Aunt had power over Father's health decisions when he named her as his health-care representative. *Id.* at 28. Although Aunt's decisions occasionally upset Father, like when she terminated his lease and moved his belongings to storage, Father took no action to counter her decisions. *Id.* at 46. By handling virtually all of Father's financial, legal, and health affairs, Aunt became "a de facto guardian" over Father. *Id.* at 27. In short, Aunt exercised superiority and influence over Father, evidence of which supports the trial court's finding of a fiduciary or confidential relationship.

## B. Aunt's Breach of Her Fiduciary Duty to Father

After finding that Aunt and Father had a fiduciary relationship, the trial court concluded that Aunt "breached her fiduciary duty" to Father after she refused to follow his "instructions to distribute the proceeds of the life insurance to his [D]aughters." *Id.* at 49. Fiduciaries owe a "duty of complete loyalty" and cannot act with self-interest. *Matter of Living Trust Agreement of Morningstar*, 136 N.E.3d 1139, 1154 n.16 (Ind. Ct. App. 2019). Therefore, constructive fraud can occur when a fiduciary "gains an advantage through a transaction involving the weaker party." *Morfin*, 831 N.E.2d at 803. For instance, after finding the requisite fiduciary relationship, the Court of Appeals in *Morfin* imposed a constructive trust against the uncle who, as the named beneficiary of his nephew's life-insurance policies, kept the proceeds for himself despite the nephew's wishes to allocate those proceeds to his daughters. *Id.* at 796, 803–04.

Here, the evidence supports the trial court's finding that Aunt breached her fiduciary duty to Father when she refused to distribute the proceeds to Daughters. Three years prior to Father's death, Mackenzi texted Aunt to say that, according to Father, he had instructed Aunt to split his life-insurance benefits among the Daughters with Marley's share held in trust. Appellant's App. Vol. 2, p. 27. Aunt responded, "Yes I am convincing him of [a] trust to protect his assets and avoid court with [Stephanie]," adding that "it will pay out when [Marley] is 18" and "will allow you and Lindsay to get yours without taxes." *Id.* Instead of refuting Mackenzi's statement, Aunt acknowledged that the Daughters would receive the life-

insurance proceeds. There was also evidence in the record that Father intended to leave all his possessions to his Daughters. In Father's will, he stated, "I leave all my worldly goods money and property to my children No other items are to be distributed." *Id.* at 32. The will also appointed Aunt as the executor of the estate and instructed her to distribute all property between the Daughters in equal amounts with Marley's share in a trust fund to be distributed "as [Aunt] sees fit" until Marley turned twenty-one. *Id.* Multiple witnesses also testified that Father greatly loved his Daughters and intended to leave everything to them. *Id.* at 40.

Aunt argues that the clear and convincing evidence does not support the trial court's finding that Father intended Aunt to give the life-insurance proceeds to the Daughters. Appellant's Br. at 12. Aunt testified that Father never instructed her to distribute the proceeds because she never knew about the policies in the first place. Appellant's App. Vol. 2, p. 33. But given Aunt's own admission that Father once said he had life insurance, the trial court did not find her testimony credible. *Id.* at 33–34. Aunt also argues that Father intended for her to get the proceeds to pay her back for the financial assistance she provided. But while Aunt testified that Father had promised to pay her back, she never testified that Father specifically said he would repay her with the life-insurance proceeds. *Id.* at 28. To find that Father intended for Aunt, rather than the Daughters, to receive the proceeds would require us to reweigh the evidence and reassess witness credibility which we will not do. *See Morfin*, 831 N.E.2d at 801. The evidence supports the trial court's finding that Father intended Aunt to distribute the life-insurance proceeds to the Daughters.

As Father's fiduciary, Aunt owed Father a duty of loyalty. By claiming the insurance proceeds for her own advantage rather than fulfilling Father's wish to provide for his Daughters, Aunt breached her fiduciary duty. *See id.* at 803. As the trial court explained, "Aunt does not feel the same loyalty to her nieces as she did to her brother," leaving one to suspect that she "saw an opportunity to claim the entire $150,000.00 for herself." Appellant's App. Vol. 2, p. 49. By failing to fulfill Father's wish to distribute the proceeds to the Daughters and instead claiming the proceeds for herself, the trial court's finding that Aunt breached her fiduciary duty was not clearly erroneous.

Because Aunt and Father had a fiduciary relationship, and because Aunt breached her fiduciary duty, Aunt's actions constitute constructive fraud. *See Kalwitz*, 822 N.E.2d at 280.

Although the trial court found no fraud or undue influence in Aunt's "designation as the beneficiary," Appellant's App. Vol. 2, p. 50, that is completely separate from the question of whether Aunt breached her fiduciary duty to Father (*i.e.*, engaged in constructive fraud). Daughters had alleged that Aunt was the one who listed herself as the beneficiary on the policies, and the trial court concluded that Daughters failed to prove so. *Id.* Therefore, the trial court concluded there was no actual fraud as to Aunt's beneficiary designation. Nevertheless, by claiming the insurance proceeds for her own advantage at the expense of Father's wishes, Aunt breached her fiduciary duty, amounting to constructive fraud.

For these reasons, the trial court's imposition of a constructive trust was not clearly erroneous. The evidence supports the trial court's findings that Aunt and Father had a fiduciary relationship and that Aunt breached her fiduciary duty, amounting to constructive fraud. And a finding of constructive fraud supports the imposition of a constructive trust.

## Conclusion

ERISA preemption is a choice-of-law defense that has to be affirmatively raised. By failing to raise preemption to the trial court, Aunt waived the issue for appeal. Applying state law, the trial court did not err in imposing a constructive trust for the benefit of the Daughters. The trial court's findings that Aunt and Father had a fiduciary relationship and Aunt breached her fiduciary duty were not clearly erroneous. We affirm.

Rush, C.J., and Massa and Molter, JJ., concur.
Slaughter, J., dissents, believing transfer should be denied.

ATTORNEY FOR APPELLANT
Robert J. Palmer
May Oberfell Lorber, LLP
Mishawaka, Indiana

ATTORNEYS FOR APPELLEES
Nathan S.J. Williams
Shannon K. Connors
Shambaugh Kast Beck & Williams, LLP
Fort Wayne, Indiana